191 P.3d 879 (2008)
Scott BRUNDRIDGE, Donald Hodgin, Jessie Jaymes, Clyde Killen, Pedro Nicacio, Shane O'Leary, Raymond Richardson, James Stull, Randall Walli, David Faubion, and Charles Cable, Respondents/Cross-Appellants,
v.
FLUOR FEDERAL SERVICES, INC. (formerly Fluor Daniel Northwest, Inc.), a Washington corporation, Appellant/Cross-Respondent, and
Fluor Hanford, Inc. (formerly Fluor Daniel Hanford, Inc.), a Washington corporation; Jerry Nichols an individual and his marital community; David Foucault, an individual and his marital community; and Jim Holladay, an individual and his marital community, Defendants.
No. 80735-3.
Supreme Court of Washington, En Banc.
Argued January 17, 2008.
Decided September 4, 2008.
*884 William Randolph Squires III, Corr Cronin Michelson, Michael Barr King, Carney Badley Spellman PS, Lawrence Carl Locker, Summit Law Group PLLC, Seattle, WA, for Appellant/Cross-Respondent.
John Patrick Sheridan, The Sheridan Law Firm P.S., Seattle, WA, for Respondents/Cross-Appellants.
Stewart Andrew Estes, Keating Bucklin & McCormack, Seattle, WA, Amicus Curiae on behalf of Washington Defense Trial Lawyers.
Jeffrey Lowell Needle, Jesse Andrew Wing, MacDonald Hoague & Bayless, Seattle, WA, Amicus Curiae on behalf of Washington Employment Lawyers Association.
Kelby Dahmer Fletcher, Peterson Young Putra, Seattle, WA, Bryan Patrick Harnetiaux, Attorney at Law, Spokane, WA, Amicus Curiae on behalf of Washington State Trial Lawyers Association.
OWENS, J.
¶ 1 Respondents are 11 pipe fitters (the pipe fitters) who are former employees of appellant/cross-respondent Fluor Federal Services, Inc. (Fluor), a company with operations on the Hanford Nuclear Reservation near the Tri-Cities. The pipe fitters prevailed at trial on their claims of wrongful discharge in violation of public policy based on their allegations that they were discharged for raising safety concerns or supporting those who did so. Division Three of the Court of Appeals certified the case to this court, and it was transferred in its entirety to this court for decision on the merits.
¶ 2 The first issue presented here is whether our decision in Korslund v. DynCorp Tri-Cities Services, Inc. (Korslund II), 156 Wash.2d 168, 125 P.3d 119 (2005), bars the pipe fitters' claims for wrongful discharge in violation of public policy by precluding them from satisfying the "jeopardy" element of the tort. A related threshold issue is whether Fluor waived the "jeopardy" element. Additional issues are whether the trial court's admission of prior bad acts testimony and hearsay warrants a new trial, whether the trial court erred in denying Fluor's CR 59 motion based on "excessive" front pay awards, and whether the trial court erred in declining to award costs to the pipe fitters. We hold that Fluor waived its right to argue the "jeopardy" element, that no evidentiary error warrants a new trial, that the trial court did not err in denying the CR 59 motion as to the pipe fitters' front pay awards, and that the pipe fitters are not entitled to costs.

FACTS
¶ 3 In May 1997, a crew, including five of the pipe fitters, refused to install valves that were rated at 1,975 pounds per square inch (psi) in a system of pipes that was to be tested at 2,235 psi. The crew was concerned that the underrated valves could cause nuclear contamination and injury to workers. Fluor laid off the crew as a whole in June 1997. The pipe fitters filed a complaint for retaliatory discharge with the United States Department of Labor Occupational Safety and Health Administration (OSHA) pursuant to the administrative remedies provided in the federal Energy Reorganization Act of 1974(ERA), 42 U.S.C. § 5851. The OSHA investigator made a finding of retaliatory discharge, and the parties settled before the case was heard by an administrative law judge. All of the pipe fitters were reinstated. The parties refer to the valve incident, including the OSHA investigation and the settlement, as Pipe Fitters I.
¶ 4 In June 1998, when the reinstated workers returned, Fluor laid off another group of pipe fitters, including the remainder of the respondents. These workers alleged at trial that their discharge was in retaliation for their support of the Pipe Fitters I group. In the fall of 1998, Fluor again laid off the respondents in the Pipe Fitters I group.
¶ 5 Both groups filed administrative complaints pursuant to the ERA for the 1998 discharges. In 1999, they also filed the complaint *885 in this action for wrongful discharge in violation of public policy in Benton County Superior Court. The pipe fitters withdrew their administrative complaints in March 2000.
¶ 6 This case has had its share of procedural complications, including removal to federal court and subsequent remand to state court, and two interlocutory appeals. Also, the originally assigned trial judge, Carolyn A. Brown, retired after making a number of rulings in limine. Judge Cameron Mitchell was assigned and then recused himself. Judge Carrie L. Runge then presided over the case through the pretrial conference and trial.
¶ 7 The case proceeded to trial in the summer of 2005. The jury heard more than a month of testimony and found Fluor liable for wrongful discharge of all 11 pipe fitters. The jury awarded the pipe fitters a total of $4,802,600 in back pay, front pay, and emotional distress damages. Fluor filed a CR 59 motion for a new trial or amended judgment, arguing that the front pay awards were excessive, and the trial court denied the motion.
¶ 8 Fluor also filed a CR 60 motion for relief from judgment, arguing that this court's decision in Korslund II, decided four months after the jury verdict in this case, required the dismissal of the pipe fitters' claims because it precluded the pipe fitters from satisfying the "jeopardy" element of the tort of wrongful discharge. The pipe fitters argued that Fluor had waived the "jeopardy" element based on the trial management report, which contained the following: "Is the raising of a safety concern the type of behavior that is protected by a clearly defined public policy? Yes. Fluor will not dispute this issue. Would discouraging the Plaintiffs from raising safety concerns jeopardize that public policy? Yes. Fluor will not dispute this issue." Suppl. Clerk's Papers (SCP) at 10277. The trial judge agreed that this constituted waiver, and she denied Fluor's CR 60 motion for relief from judgments, stating that Fluor "could have chosen to challenge the clarity and jeopardy elements of wrongful discharge at trial, but instead, chose to admit those elements." SCP at 9581-84.
¶ 9 Fluor appealed to Division Three of the Court of Appeals. That court certified the case to this court pursuant to RCW 2.06.030, and the case was transferred in its entirety to this court.

ANALYSIS

Wrongful Discharge in Violation of Public Policy
¶ 10 In order to prevail on a claim under the tort of wrongful discharge in violation of public policy, a plaintiff must prove the following three elements: (1) that a clear public policy exists (the "clarity" element), (2) that discouraging the conduct in which the employee engaged would jeopardize the public policy (the "jeopardy" element), and (3) that the employee's public-policy-related conduct caused the dismissal (the "causation" element). Gardner v. Loomis Armored, Inc., 128 Wash.2d 931, 941, 913 P.2d 377 (1996). For the fourth element, the burden shifts to the employer to offer an overriding justification for the dismissal (the "absence of justification" element).[1]Id. To satisfy the "jeopardy" element, a plaintiff must show that her or his "conduct directly relates to the public policy, or was necessary for the effective enforcement of the public policy. This burden requires a plaintiff to `argue that other means for promoting the policy ... are inadequate.'" Id. at 945, 913 P.2d 377 (alteration in original) (citation omitted) (quoting HENRY H. PERRITT, JR., WORKPLACE TORTS: RIGHTS AND LIABILITIES § 3.14, at 77 (1991)). The pipe fitters argue that Fluor waived the "jeopardy" element in the trial management report and should not be allowed to raise it now.
¶ 11 Standard of Review. The appropriate standard of review for this issue turns on whether the existence of Fluor's waiver is a question of law or fact. This matter merits some clarification. This court has said both that waiver is a question of fact, Bowman v. Webster, 44 Wash.2d 667, *886 670, 269 P.2d 960 (1954), and that it is a mixed question of law and fact, Lawson v. Helmich, 20 Wash.2d 167, 180-81, 146 P.2d 537 (1944). The existence of waiver has both factual and legal components, as the Tenth Circuit Court of Appeals explained: "`Whether facts on which a claim of waiver is based have been proved, is a question for the trier of the facts, but whether those facts, if proved, amount to a waiver is a question of law.'" Advantor Capital Corp. v. Yeary, 136 F.3d 1259, 1267 (10th Cir.1998) (quoting Garvy v. Blatchford Calf Meal Co., 119 F.2d 973, 975 (7th Cir.1941)); see also 28 AM.JUR.2D Estoppel and Waiver § 227 (2000 & Supp. 2008). This court has held that where, as here, the parties present a mixed question of law and fact but do not dispute the facts, the question is one of law for the court. Baker v. Yakima Valley Canal Co., 77 Wash. 70, 75, 137 P. 342 (1913). This court reviews questions of law de novo. City of Tacoma v. William Rogers Co., 148 Wash.2d 169, 181, 60 P.3d 79 (2002).[2]
¶ 12 A party who fails to raise an issue at trial normally waives the right to raise that issue on appeal. RAP 2.5(a). However, courts generally recognize an exception to waiver where a "`new issue arises while the appeal is pending because of a change in the law.'" United States v. Flores-Montano, 424 F.3d 1044, 1047 (9th Cir.2005) (quoting United States v. Robertson, 52 F.3d 789, 791 (9th Cir.1994)).
¶ 13 Though this court has not examined the precise issue of a "change in the law" exception to waiver, we may draw from case law on related doctrines. We have held that the "law of the case" doctrine does not apply where there is "an intervening change in controlling precedent between trial and appeal." Roberson v. Perez, 156 Wash.2d 33, 42, 123 P.3d 844 (2005). Also pertinent is the Washington case law on RCW 10.73.100(6), which allows prisoners to challenge their convictions after the personal restraint petition statute of limitations has expired if "[t]here has been a significant change in the law." Under that line of cases, if the defendant could not have argued the issue before the publication of the new decision, then the decision represents a "significant change in the law." In re Pers. Restraint of Stoudmire, 145 Wash.2d 258, 264, 36 P.3d 1005 (2001) (citing In re Pers. Restraint of Holmes, 121 Wash.2d 327, 332, 849 P.2d 1221 (1993)). This standard is consistent with the federal rule that the "change in the law" exception to waiver applies where "`there was strong precedent' prior to the change." Holland v. Big River Minerals Corp., 181 F.3d 597, 605-06 (4th Cir.1999) (concluding that there was no "strong precedent" where the precise issue in the case at bar "remained an open question" in the precedent.) (quoting Curtis Publ'g Co. v. Butts, 388 U.S. 130, 143, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967)).
¶ 14 The uncontroverted facts demonstrate that Fluor failed to raise the "clarity" and "jeopardy" elements at trial. It is undisputed that Fluor agreed not to contest the two elements in the June 2005 trial management report. Also undisputed are the facts that (1) Fluor's counsel acknowledged that the only issue of fact remaining for the jury was whether the safety complaints were a substantial factor in the pipe fitters' discharge, see Verbatim Report of Proceedings (VRP) (June 28, 2005) at 45-46; and (2) Fluor's counsel stood silent when the pipe fitters' counsel stated that the only issue in the trial was causation, 1 VRP (July 12, 2005) at 17-18, 25-30. Fluor did not argue the "jeopardy" or "clarity" elements in any trial proceeding, and it did not request a jury instruction on either element, Clerk's Papers (CP) at 6590-652. Fluor had a right to contest the elements in the trial court, and it waived that right.
¶ 15 Fluor argues that Korslund II represents an intervening change in the law, thus an exception to waiver applies. In Korslund II, a case with similar facts to those here, we held that the ERA remedies were *887 adequate to protect the public policy, and thus the plaintiff could not satisfy the "jeopardy" element. 156 Wash.2d at 183, 125 P.3d 119. Fluor contends that at the time of trial, the Court of Appeals decision in Korslund v. Dyncorp Tri-Cities Services, Inc., 121 Wash. App. 295, 88 P.3d 966 (2004) (Korslund I), rev'd in part on other grounds, 156 Wash.2d 168, 125 P.3d 119 (2005), "precluded any argument by [Fluor] based on the ERA's administrative remedies." Appellant's Reply Br. on Appeal at 5.
¶ 16 This court's holding in Korslund II was not a "change in the law" for purposes of Fluor's waiver because the conclusion we reached in Korslund II was an open question at the time of the waiver. When Fluor waived its right to challenge the "jeopardy" element, the following was true: this court had established in Hubbard v. Spokane County, 146 Wash.2d 699, 50 P.3d 602 (2002), that to properly analyze the adequacy of an alternative means of protecting the public policy, the court looks at the effectiveness of the specific procedures involved in the alternative means. Id. at 717, 50 P.3d 602 (concluding that procedure was inadequate because of short time frame and unlikely notice to potential enforcers). Hubbard had also demonstrated that while the "jeopardy" element may contain factual inquiries, the court may rule on the adequacy of an alternative means as a matter of law if the procedures are undisputed. See id. at 717-18, 50 P.3d 602. Division Three of the Court of Appeals had ruled in Korslund I that the ERA remedies were not "mandatory and exclusive," and thus that they did not preclude the plaintiff from establishing the "jeopardy" element. 121 Wash.App. at 321, 88 P.3d 966. The opinion did not evaluate whether the ERA remedy procedures themselves were adequate to protect the public policy. See id. At the time of trial, Fluor had the right to argue that the ERA remedies were adequate under this court's decision in Hubbard, but it chose not to do so. It cannot now claim that a change in the law excuses its waiver.[3] We hold that Fluor waived its right to contest the "jeopardy" element and that it does not qualify for an exception to that waiver.

Evidentiary Issues
¶ 17 Marquardt Testimony. Fluor argues that the trial court's admission of industrial hygienist Lauri Marquardt's testimony of prior bad acts warrants a new trial. Fluor specifically takes issue with three pieces of her testimony, regarding (1) a complaint she made after burning paint released fumes (paint fumes), (2) a conversation with Ed Jacobs, a supervisor, in which he told Marquardt not to "`put [her] ethics above [her] career'" (Jacobs ethics), and (3) incidents involving toxic gasses in a pit where people were working (pit). Appellant's Opening Br. at 59-61.
¶ 18 Character evidence is not admissible to prove conformity therewith, ER 404(a), but evidence of prior bad acts may be admissible for other purposes, such as proof of motive, intent, plan, knowledge, etc., ER 404(b). When a trial court admits bad acts evidence, it must first[4] identify the *888 purpose for which the evidence is to be admitted. State v. Jackson, 102 Wash.2d 689, 693-94, 689 P.2d 76 (1984). The court must then, on the record, balance the probative value of the evidence against its potential for prejudice. Id. Without such a record, effective appellate review is precluded. Id. at 694, 689 P.2d 76.
¶ 19 Here, the trial court did not identify the reason for which the Marquardt testimony would be admitted, 14 VRP (Aug. 4, 2005) at 1926-27, 1933, and because counsel's arguments referred only generally to ER 404(b), we cannot infer the specific basis for admission. Also, the court's analysis of probative value versus prejudice was minimal. With regard to the "pit" incident, the court noted that it occurred in the same time frame and with the same chain of command as the alleged retaliation against the pipe fitters and concluded that the "prejudice [was] outweighed by the relevance [sic]." Id. at 1926-27. The court did not do balancing on the record for the "paint fumes" incident or for the "Jacobs ethics" comment. We conclude that the trial court erred in failing to identify the purpose for admitting the evidence and failing to create an adequate record of "probative value versus prejudice" balancing.
¶ 20 Where the trial court has not made a record of the purpose for admission, this court must first determine whether the evidence was properly admissible for any reason under ER 404(b). Jackson, 102 Wash.2d at 694-95, 689 P.2d 76. Federal courts have long recognized that in the civil employment context, evidence of employer treatment of other employees is not impermissible character evidence; rather it may be admissible to show motive or intent for harassment or discharge. See, e.g., Spulak v. K Mart Corp., 894 F.2d 1150, 1156 (10th Cir.1990) (age discrimination); Coletti v. Cudd Pressure Control, 165 F.3d 767, 776-77 (10th Cir.1999) (retaliation); Heyne v. Caruso, 69 F.3d 1475, 1479-80 (9th Cir.1995) (sexual harassment); Ansell v. Green Acres Contracting Co., 347 F.3d 515, 523-24 (3d Cir. 2003) (evidence of favorable treatment of person in same class). This court agreed, albeit with minimal analysis, in Hume v. American Disposal Co., 124 Wash.2d 656, 666, 880 P.2d 988 (1994). In the context of wrongful discharge in violation of public policy, evidence of an employer's motive or intent to retaliate is relevant to assertions that the employee's actions caused the discharge (the "causation" element) and that the employer does not have a legitimate justification for the discharge (the "absence of justification" element). Here, evidence that Fluor retaliated against other employees for making safety complaints is admissible to show motive or intent.
¶ 21 The court must still evaluate whether the probative value of the evidence outweighed its potential for prejudice. Where the trial court has not balanced probative value versus prejudice on the record, the error is harmless[5] unless the failure to do the balancing, "within reasonable probability, materially affected the outcome of the trial." State v. Halstien, 122 Wash.2d 109, 127, 857 P.2d 270 (1993) (citing State v. Tharp, 96 Wash.2d 591, 599, 637 P.2d 961 (1981)).
¶ 22 With regard to the "paint fumes" testimony, Marquardt testified that she made specific safety complaints to the same chain of command that was involved in the pipe fitters' discharges at the same time the pipe fitters raised their safety concerns. She further testified that her supervisors treated her disrespectfully and eventually passed her up for a promotion based on her safety complaints. This evidence is highly probative of Fluor's intent to retaliate against those who raised safety concerns.
¶ 23 The "Jacobs ethics" comment is similarly probative. Marquardt testified that she *889 met with Jacobs to address the fact that the paint fumes concern had not been resolved, and he told her "not to sacrifice [her] career for [her] ethics." 14 VRP (Aug. 4, 2005) at 2004. This statement tends to prove that raising safety concerns would jeopardize her employment. Had the trial court weighed the "paint fumes" and "Jacobs ethics" evidence, it would have concluded that the evidence was more probative than prejudicial. The trial court's failure to do the balancing was therefore harmless error.
¶ 24 As to the "pit" incidents, Marquardt testified that there were two instances of potentially dangerous gasses in a confined space. She testified that after the first incident, involving hydrogen, the temporary general foreman made omissions in his records that downplayed the seriousness of the event. This incident had some probative value with respect to the "causation" and "absence of justification" elements in that it showed that the managers during the relevant time frame were motivated to downplay safety concerns. Testimony about the second incident, involving ammonia, had extremely limited probative value, if any. There was no testimony that the incident was downplayed by management or that it affected Marquardt's employment. Testimony about the two incidents taken together had minimal probative value as to the elements of the tort, and it had the potential to prejudice the jury by leading them to believe that Fluor was a "bad company" in general.
¶ 25 However, even if the trial court erred in failing to exclude the testimony, it likely did not affect the outcome of the trial because the jury heard other evidence of alleged safety incidents at Fluor. It received evidence that a group of the pipe fitters had raised a number of health and safety concerns in 1997. It also heard Marquardt's properly admitted "paint fumes" testimony above. Shane O'Leary testified that he was asked to do a procedure despite dangerous winds and that he had concerns about improperly rated valves in an incident separate from the original valve complaint. Donald Hodgin testified that he witnessed a person working at great heights without proper security. Because the jury already had ample reason to question Fluor's safety record, any error in admitting the "pit" testimony was harmless.
¶ 26 Hotline Evidence. Fluor argues that the trial court erred in admitting testimony that Fluor managers listened to a Department of Energy (DOE) safety hotline tape and tried to identify the caller. Fluor maintains that the evidence was inadmissible under ER 404(b) because the pipe fitters did not prove by a preponderance of the evidence that the acts in question occurred. This court has said, at least in the criminal context, that prior bad acts must be proved by a preponderance of the evidence. State v. Benn, 120 Wash.2d 631, 653, 845 P.2d 289 (1993) (citing Tharp, 96 Wash.2d at 594, 637 P.2d 961). "[A] trial court's preliminary finding [of preponderance] will be upheld if it is supported by substantial evidence." Id.
¶ 27 We note that this court has never commented specifically on whether the "preponderance" standard applies to prior noncriminal acts, or whether it applies in the civil context at all. Further, the court has sometimes said specifically that a preponderance is required for prior criminal acts. Tharp, 96 Wash.2d at 594, 637 P.2d 961; State v. Kilgore, 147 Wash.2d 288, 292, 53 P.3d 974 (2002) (stating that bad acts that "constitute crimes" must be proved by a preponderance). The preponderance standard is appropriate in the criminal context, where the ultimate standard for conviction is "beyond a reasonable doubt." However, the preponderance standard for testimony may be too stringent in the civil context, where the ultimate standard itself is preponderance. This issue has not been argued or briefed here, and the court specifically declines to decide whether the preponderance standard governs in this context.
¶ 28 Regardless, the pipe fitters' evidence would meet the preponderance standard if it applied. The evidence that Fluor managers tried to identify a caller to a safety hotline was presented in the testimony of Ivan Sampson, Fluor construction manager. He testified that he interrupted a meeting of managers and that someone told him that the people in the meeting were trying to *890 identify the caller.[6] Sampson testified that he did not hear the tape, but he provided substantial detail about the persons who were in the meeting. Assuming that Sampson's testimony was credible, the testimony provided substantial circumstantial evidence of the bad act in question. Any doubts about the witness's credibility would have gone to the weight of the evidence, rather than to its admissibility. Though the court potentially erred in failing to make a finding of preponderance, that error was harmless because there was substantial evidence in the record to support such a finding.[7]
¶ 29 Fluor also argues that the trial court erred in excluding a DOE report stating that investigators "could not find any evidence that the security of any DOE tape recording had been breached," Appellant's Opening Br., Ex. L at 5. In its oral ruling on the motion to admit, the trial court reasoned that the report lacked foundation because the "concerned individual" who prompted the investigation was never identified, and thus the report may not have been about the same incident. 25 VRP (Aug. 22, 2005) at 3640. Due to the foundation defect, the trial court did not abuse its discretion in excluding the report.
¶ 30 1997 OSHA Report. Fluor next takes issue with the admission of a redacted version of an October 1997 OSHA investigative report (report).[8]See CP at 2218-23. After initially ruling that no evidence about the pipe fitters' initial complaint (Pipe Fitters I) would be allowed, the court allowed the report in order to give context to the pipe fitter's complaint in this case.
¶ 31 Out-of-court statements offered in court to prove the truth of the matter asserted are hearsay, which is generally not admissible. ER 801, 802. The parties agree that the report contains hearsay. The question is whether this hearsay was nonetheless admissible because it falls within Washington's "public records" exception to the hearsay rule.
¶ 32 Standard of Review. This court reviews admission of evidence under hearsay exceptions for abuse of discretion. State v. Woods, 143 Wash.2d 561, 602, 23 P.3d 1046 (2001) (ER 803(a)(4)); State v. Davis, 141 Wash.2d 798, 841, 10 P.3d 977 (2000) (ER 803(a)(2)). A trial court abuses its discretion only when it takes a view that no reasonable person would take. State v. Castellanos, 132 Wash.2d 94, 97, 935 P.2d 1353 (1997).
¶ 33 The "Public Records" Hearsay Exception. In 1979, this court adopted Washington's evidence rules. Although it generally patterned the ER's after the Federal Rules of Evidence (FRE's), it did not adopt FRE 803(8), the federal rules' version of the public records hearsay exception. Instead, it substituted a reference to RCW 5.44.040. As the accompanying comment explained, the court did so "not because of any fundamental disagreement with the rule, but because the drafters felt that the subject matter was adequately covered by the statute and decisions already familiar to the bench and bar." 5C KARL B. TEGLAND, WASHINGTON PRACTICE: *891 EVIDENCE LAW AND PRACTICE ER 803(a)(8) judicial council cmt. at 6 (5th ed.2007), quoted in State v. Monson, 113 Wash.2d 833, 838-39, 784 P.2d 485 (1989).
¶ 34 In 1989, this court said unanimously that RCW 5.44.040 is "a codification of the common law public records hearsay exception." Monson, 113 Wash.2d at 837, 784 P.2d 485. As its name suggests, the exception applies when a hearsay declarant who is a public official makes an out-of-court statement while acting pursuant to her or his official duty. Steel v. Johnson, 9 Wash.2d 347, 357-58, 115 P.2d 145 (1941). If a hearsay declarant who is a public official reiterates or relies on the statement of a second hearsay declarant who is not a public official acting pursuant to official duty, the second declarant's statement generally is admissible only if it qualifies under a different hearsay exception. ER 805. Moreover, this court has held that "a report or document prepared by a public official must contain facts and not conclusions involving the exercise of judgment or discretion or the expression of opinion." Steel, 9 Wash.2d at 358, 115 P.2d 145; Monson, 113 Wash.2d at 839, 784 P.2d 485.
¶ 35 Applying this standard here, we hold that the trial court erred in admitting the report. In the admitted version of the report, a vast majority of the formal "conclusions" of the investigator were redacted, leaving only the "facts." However, the investigator's statement of "facts" contained a residue of "judgment" or "opinion" because where individuals disagreed on the facts, the investigator necessarily chose whose version of a particular "fact" to accept. The record here indicates that Fluor disputed a number of the "facts" in the report. Compare CP at 2148-53 (Fluor's proposed "neutral" statement of facts) with CP at 2218-23 (admitted OSHA report). While the report seems to accept as true the allegations of the pipe fitters, it discredits Fluor's version of the story. According to the Washington standard, this evidence is inadmissible as the product of the investigator's judgment and expression of opinion.
¶ 36 Given the purpose for the hearsay rule, the only reasonable conclusion is that the report is inadmissible. The report differs markedly from other public records we have deemed admissible, such as driving records, Monson, 113 Wash.2d at 839, 784 P.2d 485; fingerprint records, State v. Johnson, 194 Wash. 438, 447, 78 P.2d 561 (1938); and weather bureau records, Anderson v. Hilker, 38 Wash. 632, 634, 80 P. 848 (1905). Unlike those purely factual recordings, the report is the product of an investigation, presumably involving interviews with the affected parties, and the investigator's evaluation of the evidence as a whole. The hearsay prohibition serves to prevent the jury from hearing statements without giving the opposing party a chance to challenge the declarants' assertions. While the investigator may have done an admirable job, Fluor had no opportunity to challenge his factual conclusions. The trial court abused its discretion in admitting the report.
¶ 37 Although we find error, we hold that it was harmless under the circumstances here. The error is harmless unless it was reasonably probable that it changed the outcome of the trial. State v. Bourgeois, 133 Wash.2d 389, 403, 945 P.2d 1120 (1997). A bit of background is necessary for this analysis. Early in the proceedings, Judge Brown, the first assigned trial judge, excluded all evidence of the circumstances surrounding Pipe Fitters I. In a 2004 letter to the parties, Judge Runge, the judge assigned after Judge Brown's retirement, affirmed that she would not allow the pipe fitters to relitigate Pipe Fitters I. However, in the pretrial conference, Judge Runge acknowledged that the jury would need "very limited background information" in order to put the entire complaint and alleged chain of retaliation in "some sort of context." VRP (June 28, 2005) at 53. She ordered the parties to create an agreed statement of Pipe Fitters I facts. When the parties returned to court without an agreed statement, she ruled to admit the redacted OSHA report and also to "allow the defense to come up with what portion they disagreed with, or to express that these were only contentions of the parties." VRP (July 8, 2005) at 65.
*892 ¶ 38 Two facts lead us to conclude that the error was harmless. First, the trial court had already determined it was appropriate to admit some description of the facts surrounding Pipe Fitters I. Even if the OSHA report had not been admitted, the jury would have heard the allegations of safety concerns and retaliatory discharge from Pipe Fitters I in some format. Second, though the report's facts were not to Fluor's liking, the court offered Fluor a chance to write a statement to the jury expressing that the facts were contested. Id.
¶ 39 Fluor's strongest argument that the error was harmful is that the authority of OSHA and its investigator lent undue credence to the facts presented in the report. The trial court itself recognized this danger. The question is whether this element of enhanced credence by itself had a reasonable probability of affecting the outcome of the trial. As noted above in the "prior bad acts" discussion, the jury heard a substantial amount of evidence of both safety concerns at Fluor and retaliation by Fluor management. Even without the added credibility from the OSHA investigator, a reasonable juror would still have believed, at a minimum, that the workers had made safety complaints and that they were fired and subsequently reinstated. Combined with the other safety and retaliation testimony, it would likely have reached the same conclusion: that Fluor was liable for wrongful discharge. The error did not create a reasonable probability that the outcome of the trial would be different, and thus the error was harmless.[9]

Front Pay Awards
¶ 40 Lastly, Fluor argues that the trial court erred in denying its motion for a new trial or amendment of judgment. The motion, pursuant to CR 59(a), alleged that (1) the jury's awards of front pay were "so excessive as to unmistakably indicate that the amount must have resulted from the jury's passion or prejudice," (2) "no evidence or no reasonable inference from the evidence justifie[d] the verdict," and (3) "substantial justice has not been done." Appellant's Opening Br. at 68 (citing CR 59(a)(5), (7), (9)). Fluor takes issue with some of the pipe fitters' awards individually (Pedro Nicacio, Hodgin, and Charles Cable), and with all of the awards as a group.
¶ 41 Standard of Review. This court employs an abuse of discretion standard in reviewing denial of motions for new trial, Aluminum Co. of America v. Aetna Casualty & Surety Co., 140 Wash.2d 517, 537, 998 P.2d 856 (2000), and motions for amended judgment, see Bunch v. King County Department of Youth Services, 155 Wash.2d 165, 175-76, 116 P.3d 381 (2005). A trial court abuses its discretion when it fails to grant a new trial or amend a judgment where the damage award is contrary to the evidence. Locke v. City of Seattle, 162 Wash.2d 474, 486, 172 P.3d 705 (2007). The court examines the record to determine whether the award is contrary to the evidence. Palmer v. Jensen, 132 Wash.2d 193, 197, 937 P.2d 597 (1997). Where an award is not contrary to the evidence, this court will not find it to be the result of "passion or prejudice" based solely on the award amount. As this court said in James v. Robeck, 79 Wash.2d 864, 870-71, 490 P.2d 878 (1971), "where it can be said that the jury ... could *893 believe or disbelieve some of [the evidence] and weigh all of it and remain within the range of the evidence in returning the challenged verdict, then it cannot be found as a matter of law that the verdict was unmistakably so excessive or inadequate as to show that the jury had been motivated by passion or prejudice solely because of the amount." We keep in mind that "courts are reluctant to interfere with a jury's damage award when fairly made" because determination of damages is the duty of the jury. Palmer, 132 Wash.2d at 197, 937 P.2d 597.
¶ 42 The trial court instructed the jury that it should calculate front pay from the day of its decision "until the time the plaintiff may reasonably be expected to retire or fully recover from the continuing effects of the wrongful discharge." CP at 530. There was apparently no objection to this instruction, and Fluor does not argue that it is an inaccurate statement of Washington law.
¶ 43 Nicacio's Award. Nicacio unequivocally stated that he was not making any claim for damages from 2001 forward, but the jury awarded him front pay. Nicacio then filed a notice of partial satisfaction of judgment in the amount of his front pay award. The issue of whether his award was supported by the evidence is moot.
¶ 44 Hodgin's Award. The jury awarded Hodgin front pay, and Fluor argues that the award was improper because Hodgin would have retired by the time of the 2005 trial. Hodgin testified, "Who knows how many years I would have worked [at Fluor]?" 11 VRP (Aug. 1, 2005) at 1498. He later testified, "If I would have stayed at Hanford, no telling how long I would have stayed working. That was a very nice, easy job for an old man like me." Id. at 1537. He then stated that he thought he would have worked until 2003 or 2004 if his wife had also stayed on at Fluor. Id. The jury could have reasonably inferred that Hodgin might work beyond his 2004 estimate. Thus, the trial court did not abuse its discretion in denying Fluor's CR 59 motion with regard to Hodgin.
¶ 45 Cable's Award. The jury awarded Cable $230,000 in front pay. Fluor contends that Cable is entitled to only one year of front pay, the value of which the pipe fitters' expert calculated at $76,665. Cable was retired at the time of trial, but he testified that he would have continued to work at Hanford "until at least [age] 62." 12 VRP (Aug. 2, 2005) at 1675. In quick succession, Cable answered the question, "So you would have gone through 2006?" by saying, "The end of 2006." Id. The jury could have reasonably believed that "the end of 2006" referred to the time he would turn 62, but that it was still modified by "at least" from his first answer. The jury's award was equivalent to three years' salary and more than $100,000 less than the pipe fitters' expert's figure. It was within the range of the evidence under this interpretation. The trial court did not abuse its discretion in denying the CR 59 motion with regard to Cable.
¶ 46 All Pipe Fitters' Front Pay Awards. Fluor argues that all of the pipe fitters' front pay awards were contrary to the evidence because (1) all of the pipe fitters obtained comparable employment or retired before trial, and (2) Fluor showed that due to layoffs the pipe fitters' positions would have been eliminated in any event.
¶ 47 Fluor points to evidence that after the layoffs, all of the plaintiffs secured employment as pipe fitters with comparable wages. While that was the case, it is irrelevant because the front pay awards were supported by other evidence in the record. Each pipe fitter testified that she or he took a number of jobs with varying salaries after she or he was laid off and that those jobs were often accompanied by travel expenses. The pipe fitters' expert economist, Robert Moss, testified that he calculated future losses for each pipe fitter based on average lost wages, in addition to lost benefits and travel expenses. With the exception of Nicacio's and Hodgin's awards, all of the awards were substantially smaller than those recommended by Moss. The evidence supporting the front pay awards is not negated by the pipe fitters' procurement of "comparable employment."
¶ 48 As to the argument that the pipe fitters' jobs would have been eliminated in any case, we first note that "`courts will *894 presume for the purposes of awarding relief that an illegally discharged employee would have continued working for the employer until he or she reache[d] normal retirement age, unless the employer provides evidence to the contrary.'" Xieng v. Peoples Nat'l Bank of Wash., 120 Wash.2d 512, 531, 844 P.2d 389 (1993) (first alteration in original) (quoting MacDissi v. Valmont Indus., Inc., 856 F.2d 1054, 1060 (8th Cir.1988)). The employer bears the burden of showing that the employee would not have been retained. Id. at 532, 844 P.2d 389.
¶ 49 The record does not support Fluor's assertion that it "provided ... evidence that only six pipefitters could have retained their jobs" and thus that at least five of the pipe fitters were not entitled to front pay. Appellant's Opening Br. at 76-77. Fluor points to the pipe fitters' chart at SCP at 9632 as evidence that there were only six pipe fitters who worked for Fluor from 1997 through the time of trial. However, the list does not purport to be comprehensive. Additionally, the idea that all 11 pipe fitter respondents could not have retained their jobs is belied by Fluor's evidence showing that 27 pipe fitters were still employed at Fluor in August 2005. CP at 447. Fluor has not met its burden of showing that the pipe fitters would have not been retained, and thus front pay is not precluded on that account.
¶ 50 Lastly, Fluor argues that the jury's award of front pay to Nicacio, who did not make a claim for front pay, indicates that the jury was motivated by passion or prejudice, which tainted all of the front pay awards. For a court to find passion or prejudice, it must "be of such manifest clarity as to make it unmistakable." James, 79 Wash.2d at 870, 490 P.2d 878. When one part of a jury award is inhered with passion or prejudice, retrial is required on all issues that are "inseparably connected" to the tainted issue. Myers v. Smith, 51 Wash.2d 700, 705-07, 321 P.2d 551 (1958). Thus, "unmistakable" passion or prejudice transfers to other issues when they are "inseparably connected" to the issue in question.
¶ 51 Here, the front pay awards for the other pipe fitters are not "unmistakably" the product of passion or prejudice. Under CR 59(a)(5), damage awards must be "excessive" in order to be proof of passion or prejudice, but the awards in question were supported by the evidence, as discussed above. Additionally, even if Nicacio's award were the product of passion, it is not "inseparably connected" to the other front pay awards. The jury may simply have been motivated by its particular liking of Nicacio himself or his "nobility" in refusing to claim front pay. The jury would not necessarily have had similar sympathies toward the other plaintiffs. The trial court did not abuse its discretion in denying Fluor's CR 59 motion for a new trial or amended judgment.

Costs
¶ 52 The pipe fitters argue that the trial court erred in refusing to award them costs. Prevailing plaintiffs in wrongful discharge cases may not recover costs beyond those costs defined in RCW 4.84.010. Hume, 124 Wash.2d at 675, 880 P.2d 988. The pipe fitters assert that this holding was modified by our decision in Panorama Village Condominium Owners Ass'n Board of Directors v. Allstate Insurance Co., 144 Wash.2d 130, 26 P.3d 910 (2001). Panorama simply holds that plaintiffs, specifically those who sue insurance carriers for wrongfully denied claims, may sometimes recover costs in equity. Id. at 144, 26 P.3d 910. It is doubtful that the reasoning of Panorama applies here in light of our on-point pronouncement in Hume. Regardless, the pipe fitters did not show that equity called for an award of costs here. The claimed costs were equivalent to only three percent of the pipe fitters' total award, and the pipe fitters provide no evidence of misconduct by Fluor that contributed to excessive costs. The trial court did not abuse its discretion in denying costs.

Attorney Fees on Appeal
¶ 53 The pipe fitters request attorney fees on appeal. RCW 49.48.030 allows for fees where a party has recovered damages for lost wages. The pipe fitters have recovered *895 lost wages, and this court awards the pipe fitters attorney fees for this appeal.

Holdings
¶ 54 This court holds that Fluor waived its right to argue the "jeopardy" element at trial and may not now overcome its waiver. The court also holds the following: The trial court did not make reversible evidentiary error. The trial court did not abuse its discretion in denying the CR 59 motion for new trial or amended judgment. The trial court correctly denied costs to the pipe fitters. This court affirms the trial court in all respects and awards attorney fees on appeal to the pipe fitters.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, MADSEN, CHAMBERS, FAIRHURST, J. JOHNSON, JJ., and MORGAN, J.P.T.
SANDERS, J. (concurring in part, dissenting in part).
¶ 55 I concur with the majority except for the denial of the pipe fitters's reasonable out-of-pocket litigation expenditures. The statutory entitlement to reasonable attorney fees necessarily includes reasonable out-of-pocket litigation expenditures.
¶ 56 "In any action in which any person is successful in recovering judgment for wages or salary owed to him, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer." RCW 49.48.030. This "remedial statute ... must be construed to effectuate its purpose." Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett, 146 Wash.2d 29, 41, 42 P.3d 1265 (2002). The purpose of this statute is to make the successful plaintiff whole. See Hayes v. Trulock, 51 Wash.App. 795, 755 P.2d 830 (1988).
¶ 57 To make successful plaintiffs whole "`reasonable attorney fees' must, by necessity, contemplate expenses other than merely the hours billed by an attorney." Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co., 144 Wash.2d 130, 144, 26 P.3d 910 (2001); see also La.-Pac. Corp. v. Asarco, Inc., 131 Wash.2d 587, 605-06, 934 P.2d 685 (1997) (Sanders, J., concurring) (noting any distinction "between compensation for the attorney's time and reimbursement for the attorney's out-of-pocket expense (or reimbursement to the client who has previously paid the out-of-pocket expenses) is artificial and illusory"). Litigation often necessitates a client to make sizeable out-of-pocket expenditures, as essential to success as the intellectual acumen of the attorney. For example, paralegal services, supplemental secretarial services, and an attorney's out-of-town travel are integral to the ultimate success of litigation. What we knew in practice we must not forget as judges.
¶ 58 We recognize this reality of litigation in other circumstances. In civil rights litigation this court awards prevailing plaintiffs their out-of-pocket expenditures because such awards act "to further the policies underlying" civil rights legislation. Blair v. Wash. State Univ., 108 Wash.2d 558, 573-74, 740 P.2d 1379 (1987); see also Missouri v. Jenkins, 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). Similar to civil rights litigation, there is a strong public policy protecting the pipe fitters. Fluor fired the pipe fitters for refusing to install underrated valves that could cause nuclear contamination. The pipe fitters acted to protect against both environmental and public harm. As such they should completely recover from Fluor's retaliatory acts.
¶ 59 The majority notes the pipe fitters's costs account for only three percent of the pipe fitters's total award. Majority at 894. However, the percentage is irrelevant; whether reasonable out-of-pocket litigation expenses are available is a categorical determination, either the successful plaintiffs are entitled to expenses or they are not. The majority's rule would equally apply to the situation where successful plaintiffs incur expenses 300 percent, as well as three percent, of their actual recovery. The purpose of RCW 49.48.030 is to make successful plaintiffs whole. The majority fails to effectuate this purpose and holds the pipe fitters are only entitled to partial restoration.
*896 ¶ 60 In the final analysis, denying reasonable out-of-pocket expenses creates a barrier to justice. In a war of attrition, a private party with limited resources will not rationally pursue a Pyrrhic victory.[1] In this case, the total award exceeded out-of-pocket expenses, but in the next case the expenses may exceed the total award. "`Failure to reimburse expenses [may] eat up whatever benefits the litigation might produce and additionally impose a backbreaking burden upon the small, but justified, litigants.'" Panorama, 144 Wash.2d at 144, 26 P.3d 910 (quoting Asarco, 131 Wash.2d at 606, 934 P.2d 685 (Sanders, J., concurring)). Awarding reasonable attorney fees, which include reasonable expenses, ensures the successful plaintiff will not be worse off from successfully enforcing his rights in court.
¶ 61 The majority cites Hume v. American Disposal Co., 124 Wash.2d 656, 880 P.2d 988 (1994), as controlling. To the extent Hume denies reasonable out-of-pocket litigation expenditures as part of the award of reasonable attorney fees under RCW 49.48.030, it should be overruled. The law has moved on since Hume. It is incorrect and harmful.
¶ 62 In sum, the pipe fitters should be awarded litigation expenses as part of those "reasonable attorney's fees" mandated by RCW 49.48.030.
¶ 63 I dissent.
NOTES
[1] The employer has the burden of production for this element, but the ultimate burden of persuasion remains with the employee to show that the employer's justification was pretextual. Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wash.2d 46, 68, 821 P.2d 18 (1991).
[2] The pipe fitters contend that we should review the trial court's finding of waiver under an "abuse of discretion" standard, but the trial court findings cited by the pipe fitters are all conclusions of law, not findings of fact. This court reviews conclusions of law de novo whether or not they are styled as "findings of fact." Alexander Myers & Co. v. Hopke, 88 Wash.2d 449, 460, 565 P.2d 80 (1977) (Stafford, J., dissenting).
[3] Fluor contends that its waiver did not prejudice the pipe fitters in any way, and thus the waiver should be excused. However, as a result of the waiver, the pipe fitters reasonably chose not to develop certain arguments. For example, the pipe fitters did not define the public policy that they sought to protect because Fluor had admitted that discouraging their safety complaints would have jeopardized "a clearly defined public policy." SCP at 10277. The pipe fitters argue that if the "clarity" element had been at issue in the case, they would have established a public policy of protecting health, safety, and the environment based on the ERA and numerous other state and federal statutes. Thus it is possible that the ERA remedies, though adequate as a matter of law in Korslund II, would not adequately protect the proffered public policy in this case. The pipe fitters also could have presented factual evidence that, for example, they took specific actions to protect public policy that were not covered by the ERA remedies. Fluor's waiver was not inconsequential to the pipe fitters' case.
[4] Fluor argues, in a footnote, that the trial court erred in failing to make a finding that the "bad acts" in Marquardt's testimony were established by a preponderance of the evidence. Appellant's Opening Br. at 57 n. 33. We need not decide here whether the preponderance standard applies in civil cases (see discussion below in "hotline evidence"), but if it does, the pipe fitters' evidence met that standard. The pipe fitters made an appropriate offer of proof, see State v. Kilgore, 147 Wash.2d 288, 295, 53 P.3d 974 (2002) (stating that court may rule to admit bad acts based only on offer of proof), and Marquardt's testimony was clear and detailed enough to provide substantial evidence that the acts occurred, see State v. Benn, 120 Wash.2d 631, 653, 845 P.2d 289 (1993) (stating that preponderance finding upheld if there is substantial evidence in the record to support it). Any error by the court in failing to make a finding of preponderance on the record was harmless (see standard below).
[5] The "harmless error" standard applies to error under ER 404. See Jackson, 102 Wash.2d at 695, 689 P.2d 76.
[6] Fluor objected on hearsay grounds at the time, but it does not raise that issue here.
[7] Even if the court erred in admitting the testimony, the error was harmless because the jury heard a substantial body of evidence of retaliatory motive and behavior by Fluor against those bringing safety complaints, including: Marquardt's "Jacobs ethics" testimony, testimony that she was passed for promotion after raising safety concerns, and testimony about Fluor's strategy to "harass you into just becoming silent," 14 VRP (Aug. 4, 2005) at 2061; Fluor manager David Foucault's description of DOE Voluntary Protection Program (VPP) "star site" certification process and time frame and testimony that a clean safety record was necessary for VPP "star cite" designation; plaintiff Raymond Faubion's testimony that he raised concerns about a rewards catalog disincentivizing safety reports and was subsequently removed from the VPP safety committee; plaintiff Raymond Richardson's statement that management's attitude toward him changed after he made a call to a DOE hotline; Katherine Hodgin's feelings that her job duties were reduced in retaliation after her husband's layoff; Fluor superintendent John Stredwick's averment that his assignments changed in retaliation after he gave a deposition in this case; plaintiff O'Leary's testimony that he was made to feel like a troublemaker after complaining about valve safety.
[8] The report was in the form of a letter from OSHA Regional Administrator Richard Terrill to Fluor General Manager Stew Heaton.
[9] In reaching this result, we do not overlook that our Court of Appeals has split on the question of whether we should adopt FRE 803(8)(C) as the law of Washington. Compare Goodman v. Boeing Co., 75 Wash.App. 60, 80-81, 877 P.2d 703 (1994) (Division One following cases from the United States Court of Appeals for the Ninth Circuit), aff'd, 127 Wash.2d 401, 899 P.2d 1265 (1995), with Bierlein v. Byrne, 103 Wash.App., 865, 869-71, 14 P.3d 823 (2000) (Division Two recognizing that FRE 803(8)(C) has not been adopted by this court and seems inconsistent with Washington cases, including Steel and Monson). However, we decline to answer the question in this case. In light of our determination that the error in admitting the report was harmless, the answer will not affect the outcome.

We also need not decide today whether the law of Washington requires that, when a hearsay declarant is a public official, she or he must, like most other hearsay declarants, speak from "firsthand knowledge." See Beck v. Dye, 200 Wash. 1, 9-10, 92 P.2d 1113 (1939); Advisory Committee's Note to FRE 803, 56 F.R.D. 183, 303 ("In a hearsay situation, the declarant is, of course, a witness, and neither this rule nor Rule 804 dispenses with the requirement of firsthand knowledge."); FRE 803(6) (to be admissible in federal court, information must be made by "a person with knowledge.").
[1] A "Pyrrhic victory" is an allusion to King Pyrrhus of Epirus in the battle of Asculum against the Romans in 280 BC. Six thousand Roman soldiers were killed, but so were over three thousand of Pyrrhus's soldiers. When congratulated on the victory Pyrrhus replied, another such victory would undue him. Plutarch, The Lives of the Noble Grecians and Romans, in Great Books of the Western World 325 (Robert Maynard Hutchins ed., Encyclopedia Britannica, Inc., 1952).