IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33945-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JUSTIN GABRIEL GEBHARDT, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. —Justin Gebhardt appeals his convictions for possession and
delivery of methamphetamine, arguing that the State failed to establish a chain of custody
for the baggies of methamphetamine tested by the Washington State Patrol Crime
Laboratory that he was alleged to have possessed and delivered. Because Mr. Gebhardt

failed to object and does not argue the admission of the evidence was a manifest constitutional error, we will not review the trial court's admission of the evidence. The State's evidence against Mr. Gebhardt was sufficient and his convictions are affirmed.

FACTS AND PROCEDURAL BACKGROUND

A Yakima County narcotics task force identified Anita Ballesteros as a drug addict who sold methamphetamine to support her habit. Detective Eric Horbatko received information that Ms. Ballesteros had exhausted her supply of methamphetamine and would be looking to purchase more. Interested in identifying Ms. Ballesteros's supplier, the task force arranged a controlled buy with a confidential informant.

The controlled buy occurred on December 5, 2014, at an Econo Lodge motel in Yakima. The confidential informant had been inside the motel room for about 30 minutes before Detective Horbatko saw another man, known only as Walt, enter the room. According to the confidential informant, they sat in the room waiting for Walt to get a text message from the supplier. After about 17 minutes, Detective Horbatko saw Walt leave the room and walk to a yellow pickup truck in an adjacent parking lot.

Special Agent Joshua Gravell was located just 10 feet behind the yellow truck, whose only occupant was its male driver. Agent Gravell saw Walt get into the passenger seat of the truck and remain there for roughly 30 seconds before leaving the vehicle with what appeared to be a ball of white substance in his hand. He then watched Walt walk

2

back to the Econo Lodge and reenter the room where the confidential informant was waiting.

According to the confidential informant, Walt returned to the room with methamphetamine, which he gave to Ms. Ballesteros. The confidential informant paid Ms. Ballesteros for a portion of the methamphetamine—two one-inch-by-one-inch clear plastic baggies, with skull patterns on them—and left the room, delivering the baggies to Detective Horbatko. The detective packaged the baggies as evidence, and later weighed and field tested them. They were each approximately 1.7 grams and both tested positive for methamphetamine.

Meanwhile, Detective Gary Wilcox followed the yellow pickup truck and observed its driver engage in what appeared to be another drug transaction. When Detective Horbatko ran the truck's license plate number, he discovered the truck was registered to Justin Gebhardt, whose photograph the detective retrieved from Department of Licensing records to show to Agent Gravell. Agent Gravell confirmed that Mr. Gebhardt was the man he had seen driving the yellow truck on December 5.

Based on this evidence, Detective Horbatko obtained a warrant to search Mr. Gebhardt's garage, which officers executed about a week after the controlled buy at the Econo Lodge. During the search, the task force seized a pipe for smoking either methamphetamine or crack cocaine, a digital scale, and a one-and-a-half-inch by one-and-a-half-inch red opaque baggy containing a crystalline substance. Detective Horbatko

3

asked Mr. Gebhardt, who had been sleeping in the garage with a female companion, who the red baggy belonged to, and Mr. Gebhardt told the detective it was his.

The State charged Mr. Gebhardt with one count of delivery of methamphetamine based on the transfer of the two skull patterned baggies to Walt on December 5 and with one count of possession of methamphetamine based on the red baggie found in his garage on December 12.[1]

At trial, the two skull patterned baggies and the single red baggie were admitted as exhibits 2 and 4, respectively, without objection by the defense. Detective Horbatko provided the testimony identifying the baggies, stating he had packaged the skull patterned baggies as evidence but that the single red baggie seized during the search had been packaged as evidence by Detective Garcia. Detective Horbatko also testified to extensive experience identifying controlled substances, including attending a 40-hour manufacturing school where he was taught all of the ingredients of methamphetamine and actually made some.

Forensic scientist Jason Stenzel of the Washington State Patrol Crime Laboratory was then shown exhibits 2 and 4 and testified he recognized them as the methamphetamine he had tested for Mr. Gebhardt's prosecution, based on blue tape he

---

[1] Another charge, based on Mr. Gebhardt's alleged delivery of methamphetamine to his female companion on December 12 was dismissed at trial.

4

had affixed with his initials, his case number, and the date he sealed the evidence back up. He testified as follows to the condition of the evidence, and to its substance:

A.      ... The material in each of the bags in [State Identification 2] was found to contain methamphetamine hydrochloride. Evidence in [State Identification 2] was a tape sealed Ziploc bag that held two Ziploc bags each with white crystalline material. The material in each bag was analyzed. The net weights were found to be 1.5 grams and 1.5 grams.

Report of Proceedings (RP) at 244-45.

A.      For State Identification 4,—report State Identification 21 reads, "Item 002 was a tape sealed Ziploc plastic bag that [held] a Ziploc plastic bag that held 1.6 grams net weight of white crystalline material. The material was analyzed. It was found to contain methamphetamine hydrochloride."

RP at 244. Dr. Stenzel also testified that, in general, the crime lab receives evidence believed to contain controlled substances either directly from law enforcement agencies, or "from law enforcement agencies either through secure transport, UPS or certified mail." RP at 238. He did not testify how the baggies admitted as exhibits 2 and 4 arrived at the crime lab.

The jury found Mr. Gebhardt guilty of both possession and delivery of methamphetamine. Mr. Gebhardt appeals.

## ANALYSIS

Mr. Gebhardt assigns error to the trial court's admission of exhibits 2 and 4 on the basis that the State failed to establish a chain of custody and the evidence should have

been suppressed. The court cannot have erred in failing to suppress evidence where no motion to suppress the evidence was made. Mr. Gebhardt did not object in the trial court that an inadequate foundation had been laid for exhibits 2 and 4.

Generally, appellate courts will not entertain issues raised for the first time on appeal. RAP 2.5(a); *Brundridge v. Fluor Fed. Servs., Inc.*, 164 Wn.2d 432, 441, 191 P.3d 879 (2008). The reason for this rule is to afford the trial court an opportunity to correct errors, thereby avoiding unnecessary appeals and retrials. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983). An exception exists in RAP 2.5(a)(3) for manifest error affecting a constitutional right, but Mr. Gebhardt makes no argument that admitting the baggies qualifies as such an error.

Instead, Mr. Gebhardt bases his legal argument on *State v. Roche*, 114 Wn. App. 424, 436, 59 P.3d 682 (2002), in which the court ordered new trials for two defendants convicted and sentenced for methamphetamine possession, after it came to light that the chemist from the Washington State Patrol Crime Laboratory who had tested the substance in the defendants' cases had been self-medicating with drugs sent to the crime lab for testing purposes. In holding that the chemist's malfeasance broke the chain of custody and tainted the integrity of the defendants' trials, the court said the following about the importance of a chain of custody:

> [W]here evidence is not readily identifiable and is susceptible to alteration
> by tampering or contamination, it is customarily identified by the testimony

of each custodian in the chain of custody from the time the evidence was acquired. [*State v. Campbell*, 103 Wn.2d 1, 21, 691 P.2d 929 (1984)]. This more stringent test requires the proponent to establish a chain of custody "*with sufficient completeness* to render it *improbable* that the original item has either been exchanged with another or been contaminated or tampered with." *United States v. Cardenas*, 864 F.2d 1528, 1531 (10th Cir.1989). Factors to be considered include the nature of the item, the circumstances surrounding the preservation and custody, and the likelihood of tampering or alteration. *Campbell*, 103 Wn.2d at 21. The proponent need not identify the evidence with absolute certainty and eliminate every possibility of alteration or substitution. *Campbell*, 103 Wn.2d at 21. "[M]inor discrepancies or uncertainty on the part of the witness will affect only the weight of the evidence, not its admissibility." *Id.*

114 Wn. App. at 436 (third alteration in original).

*Roche* does not help Mr. Gebhardt because any objection to the foundation laid by the State for exhibits 2 and 4 was waived. Where an evidentiary objection is waived, we need not examine how the trial court should have ruled.

The jury heard Detective Horbatko's testimony that he recognized exhibits 2 and 4, respectively, as the baggies of methamphetamine obtained in the controlled buy and seized during the search of Mr. Gebhardt's garage. It heard Dr. Stenzel's testimony that he recognized exhibits 2 and 4 as the evidence he had tested in Mr. Gebhardt's case. If jurors had any concern that a more complete chain of custody could have been established, it could weigh the evidence accordingly. The State's evidence was sufficient to convict.

7

No. 33945-9-III
*State v. Gebhardt*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.

8