[No. 47454–1. En Banc. December 17, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. JO ELLIOTT THARP, *Petitioner.*

*Thomas J. Resick* and *Warner & Resick,* for petitioner.

*David S. McEachran, Prosecuting Attorney,* for respondent.

HICKS, J.—The petitioner/appellant, Jo Elliott Tharp, was accused by information with the crime of murder in the second degree and tried before a jury. The State alleged that he shot and killed William Ray Bond on or about March 30, 1978, in violation of RCW 9A.32.050(1)(b). On that day in the early evening hours, a series of crimes was committed in a Bellingham neighborhood. Later, the evening of that day or the early morning hours of the next, other offenses were committed in rather widely separated areas of the city. All of these crimes except one were uncharged as to Tharp, but were nevertheless admitted into evidence at his trial over objection.

Tharp had been previously convicted of auto theft and was, on the day of the murder of Bond, on furlough from the Department of Institutions. The jury was permitted to learn of his furlough status and the commission of the previous crime over the objection of the defense, though Tharp never testified.

The final evidentiary matter to which Tharp objected in the trial court was the admission of a Seattle motel registration slip completed within hours of the last of the series of Bellingham crimes, the theft of a Chevrolet automobile. That automobile was identified on the motel registration slip.

The jury found Tharp guilty, and he appealed the judgment entered on the verdict. Details of this case are set forth with more particularity in *State v. Tharp,* 27 Wn. App. 198, 616 P.2d 693 (1980).

The Court of Appeals, Division One, in an opinion by Swanson, J., affirmed the trial court in all of its evidentiary rulings except one. It held that the motel registration slip should have been excluded, but found the error to be harmless and, consequently, affirmed the judgment entered on the jury's verdict. We differ as to some of the evidentiary rulings, but we otherwise affirm the Court of Appeals.

In disposing of Tharp's evidentiary objections to the uncharged crimes, the appellate court noted his reliance on the rule that generally evidence of the commission of other crimes may not be admitted in evidence in a criminal prosecution. It also noted the rule's exception that collateral crimes are admissible for certain specific limited purposes. *See, e.g., State v. Goebel,* 36 Wn.2d 367, 218 P.2d 300 (1950) (*Goebel* I); *State v. Goebel,* 40 Wn.2d 18, 240 P.2d 251 (1952) (*Goebel* II). *See generally* E. Cleary, *McCormick on Evidence* § 190, at 447–54 (2d ed. 1972).

■ The Court of Appeals sustained the trial court in its admission of the collateral crimes "[u]nder the res gestae, or same transaction, analysis . . ." *State v. Tharp, supra* at 205. In so doing, it held the standard of proof of the commission of admissible collateral crimes and defendant's

connection to them to be a preponderance of substantial evidence or clear and convincing evidence. *Tharp,* at 203. These have been held to be two different standards of proof. *See Beckett v. Department of Social & Health Servs.,* 87 Wn.2d 184, 550 P.2d 529 (1976), and Wiehl, *Our Burden of Burdens,* 41 Wash. L. Rev. 109 (1966). In order that there be a single standard in this area, we hold that a preponderance of evidence is the State's burden of proof in this case. We are otherwise content to adopt the opinion of the Court of Appeals on this phase of the case concerning the admissibility in evidence of collateral crimes.

Tharp charges that it was error for the trial court to allow into evidence his previous conviction for auto theft and his furlough status from the Department of Institutions at the time of the murder when he did not take the witness stand. This issue, one of first impression in this state, is our major concern on this discretionary review. The issue differs somewhat from that of the admission of evidence of uncharged crimes, though it stems from the same exclusionary rule exception.

In this instance, the uncharged crimes were an unbroken sequence of incidents tied to Tharp, all of which were necessary to be placed before the jury in order that it have the entire story of what transpired on that particular evening. Each crime was a link in the chain leading up to the murder and the flight therefrom. Each offense was a piece in the mosaic necessarily admitted in order that a complete picture be depicted for the jury. *See* E. Cleary, *supra* at 448 & n.34, 451 n.46.

The prior conviction for auto theft and the furlough status from the Department of Institutions at the time of the murder are another matter. They had no direct connection with the crime charged. Tharp neither took the witness stand nor otherwise placed his character in issue, which could have justified the use of the disputed evidence. *See* ER 609.

The State urged admission of the evidence upon the trial court for the purported purpose of establishing motive. It

argued to the trial court and in its brief here that it was critically important to show Tharp's prior conviction of taking a motor vehicle without the owner's permission, for which he was sent to prison, and also to show that he was on furlough from prison when Bond was murdered.

In an ordinary theft of a motor vehicle case, the State asserts there is little incentive for the thief who is caught to kill the person apprehending him. He would have much more at stake in killing the individual than in the underlying crime of taking a motor vehicle. Here, however, Tharp had been released from custody by the Department of Institutions on a short furlough and was scheduled to return to prison within a day of the killing. If, contends the State, he had been apprehended by Bond and turned over to the police, he would be assured that the authorities would extend his period of incarceration to a great extent. This fact purportedly presented a very strong motive for Tharp to have shot Bond, who under the circumstances shown by the evidence can be supposed to have found Tharp with his son's car.

The trial court accepted the State's theory and the evidence was admitted. We have some doubt about this ruling. ER 404(b) concerning other crimes, wrongs, or acts provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The comment accompanying this rule when it was proposed by the judicial council stated in part:

> The court must determine whether the danger of undue prejudice outweighs the probative value of the evidence, in view of the availability of other means of proof and other factors. Slough & Knightly, *Other Vices, Other Crimes,* 41 Iowa L. Rev. 325 (1956). . . .
>
> The fact that section (b) uses the discretionary word "may" does not confer arbitrary discretion on the trial

judge. Whether evidence is admissible under this section is determined by reference to the considerations set forth in Rule 403.[1]

In *Goebel* I, *supra* at 379, Hill, J., in writing for the court said:

> [T]his class of evidence, where not essential to the establishment of the state's case, should not be admitted, even though falling within the generally recognized exceptions to the rule of exclusion, when the trial court is convinced that its effect would be to generate heat instead of diffusing light, or, as is said in one of the law review articles above referred to, where the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it. This is a situation where the policy of protecting a defendant from undue prejudice conflicts with the rule of logical relevance, and a proper determination as to which should prevail rests in the sound discretion of the trial court, and not merely on whether the evidence comes within certain categories which constitute exceptions to the rule of exclusion.

In *Goebel* II, *supra* at 21, after listing the exceptions permitting admissibility, the court states:

> This list of exceptions is not necessarily exclusive, the true test being whether the evidence as to other offenses is relevant *and necessary to prove an essential ingredient of the crime charged.*

(Italics ours.) The same statement is found in *State v. Dinges*, 48 Wn.2d 152, 292 P.2d 361 (1956), where the court held that the true test of admissibility of unrelated crimes is not only whether they fall into any specific exception, but whether the evidence is relevant and necessary to prove an essential ingredient of the crime charged.

The State's principal argument that Tharp's furlough status furnished a strong motive for him to commit murder under the circumstances of this case is not overly persua-

---

[1]ER 403 reads:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

sive to us. Black's Law Dictionary (4th rev. ed. 1968) defines motive as:

> Cause or reason that moves the will . . . An inducement, or that which leads or tempts the mind to indulge a criminal act.
>
> . . . the moving power which impels to action for a definite result. . . . that which incites or stimulates a person to do an act.

(Citations omitted.)

Here in the State's case in chief, it presented evidence that the victim, Bond, had managed to stop the stolen Porsche by blocking its path with his Chevrolet Monte Carlo. Presumably, Bond had obtained the keys from the Porsche before he walked to a nearby residence and requested that the police be called. The keys were later found in the pocket of the victim's trousers. And, the Porsche was not started or moved while Bond was gone from the scene. Following his request for police assistance, Bond returned to the stopped vehicles. Loud voices were heard as though an argument was in progress and then the sound of blows as though "someone was getting smacked". Thereafter, two shots were heard.

The above sequence of events is difficult to square with the State's motive argument. Its theory is tenuous at best. It seems highly unlikely that Bond would have been permitted to take the Porsche keys and leave the scene to go to a nearby residence if the motive to prevent apprehension at all costs, even to the point of taking a life, was present in Tharp's mind at the time.

Even if the State is correct in its contention, however, before exercising its discretion to admit the prior conviction and the furlough status, the trial court should weigh the necessity for its admission against the prejudice that it may engender in the minds of the jury. *Goebel* I. Without such balancing and a conscious determination made by the court on the record, the evidence is not properly admitted. We have held that no less is required before admitting evidence of certain past convictions for impeachment purposes

when a defendant testifies in his own behalf. *State v. Alexis*, 95 Wn.2d 15, 621 P.2d 1269 (1981).

Here, there is no indication that the trial court did more than accept the State's contention that the disputed evidence was admissible to show motive. In its only ruling on the matter made when hearing a motion in limine, the court stated:

> And I think that the evidence of the prior convictions should be brought in because I think it's a matter on motive, and you can argue that to the jury. You can make your argument to the jury that you have with me, that why would a person ever kill somebody if they're just looking at going back for a few more years in prison, but we know the fact that somebody's out on a work furlough and he's down in the institutions and on some felony convictions, and if he's involved in the same thing again while he's out on furlough, they're certainly going to be tacking some more time on. So I think it's entirely relevant.

Later, during the trial, objection was again voiced against admission of Tharp's furlough status. The court overruled the objection without comment. The discretion the court has to admit or exclude evidence after weighing the consequences of its admission simply was not exercised. If the necessity to establish motive in this case or the prejudice to the defendant from admitting evidence to establish motive was given consideration by the trial court, the record does not disclose it.

The State further argues the conditions of the furlough could be used to establish that Tharp was in Bellingham at the time of the crime. Perhaps the furlough status, because of its short 3–day duration, might have been somewhat probative on that issue had there been any dispute on the point. There was none.

On the issue of the Seattle motel registration slip, we agree with the Court of Appeals that it was not admissible under the Uniform Business Records as Evidence Act. The registrant, in this instance, provided too much unverified information for the motel record to qualify for admis-

sion. In *State v. Tharp,* 26 Wn. App. 184, 612 P.2d 11 (1980) (prosecution for theft of an automobile) concerning the same registration slip, the court stated that without handwriting analysis or some other independent means of connecting Tharp to the registration slip, it simply was not admissible. We agree with that holding. It should be noted, however, that the trial court did not have the benefit of the 26 Wn. App. *Tharp* as that case had not been decided at the time of the trial of this case.

We now consider whether the above evidentiary rulings constitute reversible error. They do not, in our view, constitute constitutional error. We do not, then, apply the rigorous "harmless error beyond a reasonable doubt" test.[2] Rather, we apply the rule that error is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred. *State v. Cunningham,* 93 Wn.2d 823, 613 P.2d 1139 (1980).

When we focus on the evidence that remains after excluding the motel registration slip, Tharp's prior conviction, and his furlough status, we find the following:

Early in the evening of March 30, 1978, Tharp was riding around the City of Bellingham in a vehicle with two other individuals. At approximately 6:30 p.m. he was dropped off at a local shopping center. Sometime after 5 p.m., on the same evening, and in the same vicinity, a car belonging to a Ms. Larrieux was prowled. A purse, the certificate of title to the car, a key ring, and a bottle of pills were taken.

A short distance away, sometime after 6:30 p.m., the residence of a Mr. Tooker was burglarized and an automatic pistol, a bottle of rum, a knife, a pair of gloves, a commemorative coin, and a camper key were taken. For some reason, the certificate of title and the bottle of pills taken from the Larrieux vehicle got left at the Tooker home. Sometime after 8 p.m., a pickup truck owned by a Mr. Hoaglund was

---

[2]For a discussion, see Brachtenbach, C.J., concurring in *State v. Evans,* 96 Wn.2d 1, 5, 633 P.2d 83 (1981).

taken from a parking lot that abutted the Tooker residence. The Hoaglund vehicle was found abandoned several miles away near the home of William Bond, the murder victim.

At about 11 p.m., Chad Bond, the son of the murder victim, heard what he thought to be his car being started and driven away from its parking place. After confirming that his car was missing, Chad notified the police while his father left in the family car to attempt to find his son's vehicle. Thereafter a neighbor, pressed into service to help, discovered both Bond automobiles about a mile from the Bond residence, with Mr. Bond's body nearby. He had been shot twice with the same automatic pistol that had been stolen from the Tooker residence. At the scene of the fatal shooting, police also found the knife, gloves and rum taken from the Tooker residence.

Sometime during the same night or the early hours of the next day, a Chevrolet automobile belonging to a Ms. Hanson was stolen from the driveway of her Bellingham home. Several days later on April 4, Tharp was arrested in Montana while driving the stolen Hanson vehicle. In Tharp's possession at the time of his arrest were Tooker's automatic pistol used to kill Bond, the commemorative coin stolen from the Tooker home, and the key ring taken from the Larrieux vehicle.

We should avoid multiple trials and attendant uneconomic use of judicial resources when the new trial will inevitably arrive at the same result. We believe this to be such a case. Had the disputed evidence not been admitted, we are satisfied the verdict of the jury would have been the same. It is inconceivable to us that it could be otherwise. Sending this matter back for a new trial in order that there be handwriting analysis of the motel registration slip and a balancing of the need for the evidence of the conviction and furlough status against the prejudice ensuing from its admission seems a useless act in these circumstances. Consequently, we hold the disputed evidentiary rulings were not prejudicial to appellant and they constitute harmless error.

Affirmed.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, WILLIAMS, DORE, and DIMMICK, JJ., concur.