IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

STATE OF WASHINGTON,          )     No. 70911-9-I
                              )
            Respondent,       )
                              )
      v.                      )     UNPUBLISHED OPINION
                              )
GARTH OLSEN,                  )
                              )
            Appellant.        )     FILED: January 20, 2015
_____)

SCHINDLER, J. — A jury convicted Garth Olsen of voyeurism. Olsen contends the court erred in admitting evidence in violation of ER 404(b) and ER 403. We affirm.

FACTS

At approximately 1:00 a.m. on February 26, 2013, Renton Police Officer Mario Magnotti and Officer Eric Stevens responded to a 911 call at the Big Foot Java espresso stand. The barista showed Officer Magnotti a cell phone video she recorded that morning of Olsen "banging on the glass and yelling and screaming and things like that." The officers found Olsen in the alley behind Big Foot Java. Officer Magnotti testified that Olsen began "ranting" and said "something like, you know, 'Do you see what they're wearing?' Or 'They don't wear anything, the baristas around here.' . . .

They're all whores.' " The officers issued Olsen a "trespass admonishment" and told him not to return to Big Foot Java or he would be arrested for trespassing.

At 4:15 a.m. that same morning, M.M. arrived for her shift at Cowgirls Espresso on Lake Washington Boulevard. Cowgirls Espresso is located less than two miles from Big Foot Java. The baristas at Cowgirls Espresso wear bikinis and lingerie. There is a drive-up window on one side of the stand and a walk-up window on the other side. In the back of the stand is an employee bathroom with a small window approximately seven feet above the ground. When M.M. parked her car, she saw "movement by [the] walk-up window" and noticed Olsen "staring" into the stand. M.M. rolled down her car window and asked Olsen "what he was doing." Olsen asked M.M. why she was there and M.M. responded, "Because I work here." Olsen said, "Oh, okay," and "kind of wandered off."

M.M. entered the stand, locked the door behind her, and turned off the alarm. M.M. then went into the bathroom to change into her work outfit. As M.M. was changing, she heard a "big boom" that "sounded like it came from outside of the wall of the bathroom." M.M. looked up and saw Olsen's face in the bathroom window. Olsen said, "You're a fucking whore, let me see your ass, let me see you." M.M. told Olsen she was "going to call the cops, and he needs to go, he needs to leave." Olsen "said he had already called the cops." M.M. "hid by the toilet" and called 911 on her cell phone.

Officers Magnotti and Stevens responded to the 911 call from Cowgirls Espresso. Officer Stevens saw Olsen walking north along Lake Washington Boulevard a few hundred yards from Cowgirls Espresso. When Officer Stevens directed Olsen to

2

stop, Olsen started running away. Officer Stevens chased Olsen on foot and arrested him.

Officer Stevens found several pieces of paper in Olsen's jacket pockets. One of the pieces of paper had multiple handwritten addresses for pornographic web sites. Another piece of paper contained the web site address for Cowgirls Espresso and the words "white/Nissan" with a license plate number underneath. The description of the car and the license plate number matched the car M.M. drove to work that morning. The State charged Olsen with one count of voyeurism for knowingly viewing M.M. at Cowgirls Espresso on February 26, 2013.

Before trial, the State filed a motion to admit evidence of Olsen's conduct earlier that same morning at Big Foot Java. The State argued that the evidence of the uncharged conduct was admissible under ER 404(b) to show that Olsen knowingly viewed M.M. for the purpose of arousing or gratifying his sexual desire. The State argued the evidence was also admissible under the res gestae exception. Olsen did not dispute that the Big Foot Java incident occurred but argued the evidence was inadmissible under ER 404(b). The court engaged in an analysis under ER 404(b) and granted the motion to admit testimony about the incident at Big Foot Java. The court ruled that the evidence of Olsen's conduct earlier that morning "goes to his state of mind and mental state." The court also ruled that "there is a continuum here in terms of res gestae." The court expressly notes that the Big Foot Java incident occurred "about an hour or two prior to the incident [at Cowgirls Espresso] at a location just down the street." The court then balanced the probative value against any prejudice and concluded the evidence was "more relevant than prejudicial."

3

During the three-day jury trial, a number of witnesses testified on behalf of the State, including M.M., Officer Magnotti, and Officer Stevens. Officer Magnotti and Officer Stevens testified about the incident at Big Foot Java and arresting Olsen near Cowgirls Espresso later that morning.

M.M. testified that when she saw Olsen watching her, she "freaked out" and was scared Olsen was going to get into the stand. M.M. said she was topless and was pulling up her underwear when she heard the noise outside and saw Olsen looking in the window at her.

Tommy McClure testified that he saw Olsen "standing on top of the ice machine" outside of Cowgirls Espresso when he arrived to deliver milk. McClure testified that Olsen was "[s]quatting down . . . and there's a little window there. It looked like he was looking in the window." McClure said when he parked nearby and got out of his truck three or four minutes later, Olsen "confronted [him], . . . stood there for a second[,] and then turned around and walked north towards the apartments or condos that are there."

Detective Gregory Barfield interviewed Olsen after he was arrested on February 26. The court admitted into evidence the audio recording of Olsen's interview with Detective Barfield. During the interview, Olsen admits that he climbed up on the ice machine outside of Cowgirls Espresso and looked in the window, "trying to get a look at [M.M.]." Olsen also admits that he called M.M. a "fuckin' whore." Olsen denies M.M. was naked when he saw her but says that M.M. "might have been putting makeup on her nipples." Olsen states he wrote down M.M.'s license plate number because he thought he could use it to "look up some more information about her."

4

In closing, defense counsel argued Olsen was guilty of only the lesser included crime of attempted voyeurism because M.M. was not naked when Olsen viewed her through the window. The attorney also argued M.M. did not have "a reasonable expectation of privacy in the stand itself."

The jury convicted Olsen as charged. Olsen appeals.

ANALYSIS

Olsen argues the court erred in admitting evidence of the Big Foot Java incident and the note in his pocket containing the web site address for Cowgirls Espresso and a description of M.M.'s car and license plate number. Olsen asserts the Big Foot Java incident had no probative value and was unfairly prejudicial and the court failed to conduct an ER 403 analysis before admitting the note.

The admissibility of evidence is within the discretion of the trial court. State v. Atsbeha, 142 Wn.2d 904, 913-14, 16 P.3d 626 (2001). We review a trial court's ruling on the admissibility of ER 404(b) evidence for abuse of discretion. State v. Magers, 164 Wn.2d 174, 181, 189 P.3d 126 (2008). Abuse of discretion is shown only when a trial court's decision is manifestly unreasonable or based upon untenable grounds or reasons. Magers, 164 Wn.2d at 181. Evidence is relevant if it "[has] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. The trial court's balancing of the danger of prejudice against the probative value of the evidence is subject to abuse of discretion that we will overturn "only if no reasonable person could take the view adopted by the trial court." State v. Posey, 161 Wn.2d 638,

648, 167 P.3d 560 (2007). A trial judge, not an appellate court, is in the best position to evaluate the prejudicial effect and relevancy of evidence. Posey, 161 Wn.2d at 648.

ER 404(b) prohibits evidence of other crimes, wrongs, or acts "to prove the character of a person in order to show action in conformity therewith." However, evidence of a defendant's prior acts is admissible under ER 404(b) for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). In order to admit uncharged crimes under ER 404(b), the trial court must find by a preponderance of the evidence that the uncharged acts occurred, identify the purpose for admitting the evidence, find the evidence is relevant for that purpose, and balance the probative and prejudicial effect. In re Det. Of Coe, 175 Wn.2d 482, 493, 286 P.3d 29 (2012).

Olsen does not dispute the Big Foot Java incident occurred. Olsen contends the court erred in ruling the Big Foot Java incident was admissible to prove intent or as res gestae.

To convict Olsen of voyeurism, the State had to prove he knowingly viewed another person "for the purpose of arousing or gratifying the sexual desire of any person." RCW 9A.44.115(2).[1] Prior misconduct evidence is necessary to prove intent "when intent is at issue or when proof of the doing of the charged act does not itself

---

[1] RCW 9A.44.115 states, in pertinent part:

(2) A person commits the crime of voyeurism if, for the purpose of arousing or gratifying the sexual desire of any person, he or she knowingly views, photographs, or films:

(a) Another person without that person's knowledge and consent while the person being viewed, photographed, or filmed is in a place where he or she would have a reasonable expectation of privacy; or

(b) The intimate areas of another person without that person's knowledge and consent and under circumstances where the person has a reasonable expectation of privacy, whether in a public or private place.

conclusively establish intent." State v. Powell, 126 Wn.2d 244, 262, 893 P.2d 615 (1995). During the incident at Big Foot Java, Olsen harassed a female barista and "rant[ed]" to Officer Magnotti about how the baristas in the area "don't wear anything" and said that they were "all whores." The evidence of Olsen's explicit language and conduct at Big Foot Java was highly probative and relevant to prove he knowingly viewed M.M. for the purpose of arousing or gratifying his sexual desire.

The case Olsen relies on, State v. Pogue, 104 Wn. App. 981, 17 P.3d 1272 (2001), to argue the evidence was not relevant to prove the essential element of intent, is inapposite. In Pogue, this court held that evidence of a defendant's prior cocaine possession had no relevance other than propensity under ER 404(b) because it did not rebut the defense of unwitting possession. Pogue, 104 Wn. App. at 985.

Olsen also argues the court erred in concluding the evidence was admissible under the res gestae exception. The res gestae or "same transaction" exception to ER 404(b) allows evidence of other misconduct to " 'complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings.' " State v. Brown, 132 Wn.2d 529, 576 n.106, 940 P.2d 546 (1997) (quoting 1 JOHN W. STRONG, MCCORMICK ON EVIDENCE § 190, at 799 (4th ed. 1992)). "Where another offense constitutes a 'link in the chain' of an unbroken sequence of events surrounding the charged offense, evidence of that offense is admissible 'in order that a complete picture be depicted for the jury.' " Brown, 132 Wn.2d at 571 n.91 (quoting State v. Tharp, 96 Wn.2d 591, 594, 637 P.2d 961 (1981)).

Here, the court did not abuse its discretion in admitting evidence of the Big Foot Java incident under the res gestae exception and ruling that the probative value of the

7

evidence outweighed potential prejudice. The Big Foot Java incident occurred less than two miles from Cowgirls Espresso and just a few hours before the charged crime and involved similar harassing behavior directed towards a female barista. Olsen also used similar language in the two closely related incidents, calling the baristas "whores." Further, evidence of the Big Foot Java incident explained why Officer Stevens and Officer Magnotti attempted to stop Olsen when they saw him walking along Lake Washington Boulevard near Cowgirls Espresso.

The case Olsen relies on, State v. Trickler, 106 Wn. App. 727, 25 P.3d 445 (2001), is distinguishable. In Trickler, the defendant was charged with possession of a stolen credit card. Trickler, 106 Wn. App. at 730. The trial court admitted into evidence several items of personal property belonging to another found in the defendant's possession. Trickler, 106 Wn. App. at 732. On appeal, the court rejected the argument that the evidence was admissible under a res gestae theory because "[w]hile the events leading up to the discovery of the stolen credit card were relevant and somewhat probative, it was not shown that [the defendant's] possession of other allegedly stolen items was an inseparable part of his possession of the stolen credit card." Trickler, 106 Wn. App. at 734. The court concluded that the evidence was more prejudicial than probative because it allowed the State to prove the defendant must have known the card was stolen because he was in possession of numerous other allegedly stolen items. Trickler, 106 Wn. App. at 734.

Olsen next argues the court abused its discretion by admitting the note found in his pocket. The note contained the web site address for Cowgirls Espresso and a

8

description of M.M.'s car and license plate number. Olsen asserts the court failed to conduct an ER 403 analysis. The record does not support Olsen's argument.

The defense filed a motion to suppress the note found in Olsen's pocket. Defense counsel argued the information contained in the note was not relevant to prove an element of the charged offense and would "more likely arouse in the jury an emotional response as to the possible outcomes this evidence signifies." The State argued the note was "highly probative of [Olsen's] identity and his location at the scene." The court denied the motion to suppress, ruling that the note was relevant to prove identity. The court ruled that under ER 403, the prejudice did not outweigh the probative value, stating, "The fact that it is damaging, apparently very damaging, to the Defense case, doesn't mean that it's unfairly prejudicial under Evidence Rule 403."

We affirm.

WE CONCUR: