# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
# DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON, | No. 85428-3-I |
| Respondent, | ORDER GRANTING MOTION FOR RECONSIDERATION, |
| v. | WITHDRAWING OPINION, AND SUBSTITUTING |
| BRANDON JEROME ROBINSON, | OPINION |
| Appellant. | |

The appellant, Brandon Robinson, has filed a motion for reconsideration of the opinion filed on October 27, 2025. The Respondent, State of Washington, has filed a response. The court has determined that the motion should be granted, the opinion withdrawn, and a substitute opinion filed; now, therefore, it is hereby

ORDERED that the motion for reconsideration is granted; and it is further

ORDERED that the opinion filed on October 27, 2025 is withdrawn; and it is further

ORDERED that a substitute opinion shall be filed.

Feldman, J.

Coburn, J.

Mann, J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

           Respondent,

           v.

BRANDON JEROME ROBINSON,

           Appellant.

No. 85428-3-I

DIVISION ONE

UNPUBLISHED OPINION

FELDMAN, J. — Brandon Jerome Robinson appeals his convictions and sentence for rape in the second degree and burglary in the first degree. He argues (1) the trial court abused its discretion by admitting under the res gestae doctrine evidence regarding his conduct in the hours prior to M.R.'s rape, (2) his conviction for aggravated assault in Pennsylvania was improperly included in his offender score at sentencing, (3) the community custody condition concerning geographic boundaries imposed by the trial court at sentencing was unconstitutionally vague, and (4) remand is necessary to strike the victim penalty assessment (VPA) and DNA collection fee from his judgment and sentence. We remand to strike the VPA and DNA collection fee. In all other respects, we affirm.

I

M.R. awoke around 5 a.m. on January 24, 2021 to a man raping her in her bedroom of her sorority house one block off the University of Washington campus. Upon waking, she pushed the man off of her and he fled, leaving behind a pair of black boots. M.R. called the police, who collected the boots, and she went to the hospital for a sexual assault examination. While M.R. was at the hospital, a man knocked on the door of her house seeking boots he left there. M.R.'s roommate took a picture of the man and furnished it to police. Police used that photo in a department-wide bulletin seeking the suspect who raped M.R.

A police officer recognized the man in the photo as Brandon Robinson, who he had encountered the same morning M.R. was raped. Around 2 a.m. that morning, some college students who lived near M.R. called police because they saw someone looking into their first floor apartment kitchen window and were frightened. Arriving officers saw someone, later identified as Robinson, leaning into an open bedroom window of a different apartment nearby. Robinson insisted that he knew the female occupant. The woman stated she did not know Robinson. One of the officers told Robinson "[t]here's a thing called voyeurism[1] . . . kind of like a peeping tom" and that if he wanted to "hang out" with someone he should maybe give the person a call or "just knock on the door like a normal person." Robinson left after officers asked him to leave. This interaction with Robinson

---

[1] The voyeurism "statute does not criminalize hostile intrusions of a person's privacy interests. Rather, it criminalizes the viewing, photographing or filming of another person, for sexual arousal or gratification, when the person is in a place where he or she would have a reasonable expectation of safety from casual or hostile intrusion or surveillance." *State v. Glas,* 147 Wn.2d 410, 420, 54 P.3d 147 (2002) (citing RCW 9A.44.115).

enabled one of the responding officers to later recognize the person in the photo provided by M.R.'s roommate as Robinson, which led to Robinson's arrest. Later analysis of DNA in the rape kit taken during M.R.'s sexual-assault examination revealed that Robinson's DNA was included.

Following a trial, a jury convicted Robinson of second-degree rape and first-degree burglary with sexual motivation. At sentencing, the trial court ruled Robinson's prior Pennsylvania offense of aggravated assault was comparable to the Washington crime of third-degree assault and included it in his offender score. The trial court imposed a standard-range sentence with community custody provisions upon release. It also imposed a VPA of $500 and a DNA collection fee of $100.

Robinson appeals.

II

A.     Res Gestae Evidence

Robinson argues the trial court abused its discretion by admitting evidence regarding his conduct in the hours prior to M.R.'s rape. More specifically, he argues (1) the evidence was not admissible as res gestae and (2) the trial court abused its discretion in failing to conduct an ER 404(b) analysis. We disagree.

Starting with Robinson's first argument—that the evidence was not admissible as res gestae—the trial court admitted the challenged evidence, and denied Robinson's motion in limine to exclude it, because it concluded that evidence of Robinson's activities in the hours prior to M.R.'s rape falls squarely under the res gestate doctrine and is therefore admissible. We review that ruling

for an abuse of discretion. *State v. Arndt*, 194 Wn.2d 784, 797, 453 P.3d 696 (2019). A trial court abuses its discretion if "'no reasonable person would take the view adopted by the trial court.'" *State v. Jennings*, 199 Wn.2d 53, 59, 502 P.3d 1255 (2022) (quoting *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001)).

A leading treatise in Washington describes "res gestae" evidence as including "evidence of misconduct that is close in time to the crime presently charged and directly relevant to proving the crime presently charged." 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 404.18, at 527 (6th ed. 2016). "Also known as the 'same transaction' exception, this doctrine allows admission of evidence of other crimes or misconduct to 'complete the story of the crime by establishing the immediate time and place of its occurrence.'" *State v. Luna*, __ Wn.2d __, 297, 578 P.3d 273 (2025) (quoting *State v. Brown*, 132 Wn.2d 529, 570-71, 940 P.2d 546 (1997)). It thus ensures "that a complete picture be depicted for the jury." *Brown*, 132 Wn.2d at 571.

Our Supreme Court has admitted evidence under the res gestae doctrine in a variety of circumstances. In *Brown*, 132 Wn.2d at 574, the court admitted a rape victim's testimony regarding a sexual assault to rebut a defendant's claims that a sexual assault of another victim was consensual where the two assaults were "markedly similar." In *State v. Tharp*, 96 Wn.2d 591, 594, 637 P.2d 961 (1981), the court admitted under the res gestae doctrine evidence of "uncharged crimes" in an "unbroken sequence of incidents . . . all of which were necessary to be placed before the jury in order that it have the entire story of what transpired on that particular evening." The court explained that "[e]ach offense was a piece in the

mosaic necessarily admitted in order that a complete picture be depicted for the jury." *Id.*

The trial court below admitted relevant evidence of Robinson's conduct prior to the rape that placed him near the time and place of the rape (he was near M.R.'s house just a few hours prior to the rape) and also explained how police were able to identify him as the person in the photograph obtained by M.R.'s roommate, which connected Robinson to the location of the rape. The evidence completed the story of the crime charged and provided the immediate context for events close in both time and place to that crime. For these reasons, the evidence is properly considered res gestae evidence, and the trial court did not abuse its discretion in admitting it as such.

Lastly, Robinson also argues the res gestae doctrine should be abandoned in Washington. As discussed above, our Supreme Court has repeatedly admitted evidence under the res gestae doctrine in a variety of circumstances that are relevant here. As recently as 2022, the court held that evidence of uncharged sexual misconduct was properly admitted as res gestae to explain delayed reporting in a case alleging rape of a child. *State v. Crossguns*, 199 Wn.2d 282, 296, 505 P.3d 529 (2022). "We are bound by the decisions of our state Supreme Court and err when we fail to follow it." *Buck Mountain Owner's Ass'n v. Prestwich*, 174 Wn. App. 702, 716, 308 P.3d 644 (2013). Robinson's argument on this point thus fails.

Turning to Robinson's second argument—that the trial court abused its discretion in failing to conduct an ER 404(b) analysis—ER 404(b) states in relevant

part, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The Tegland treatise, quoted above, explains, "[b]y time-honored tradition and case law," ER 404(b) does not apply to res gestae evidence because (1) "misconduct closely associated with the crime charged is simply not *prior* misconduct at all so ER 404(b) is out of the picture" and (2) res gestae evidence is "another exception to the general rule that prior misconduct is inadmissible." 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 404.18, at 527 (6th ed. 2016). The treatise concludes: "Either way, the evidence is admissible unless it is barred by some other rule." *Id.* at 50 (rev. ed. & Supp. 2025).

Our court has likewise explained that "res gestae evidence more appropriately falls within ER 401's definition of relevant evidence, which is generally admissible under ER 402, rather than an exception to propensity evidence under ER 404(b)." *State v. Sullivan*, 18 Wn. App. 2d 225, 236, 491 P.3d 176 (2021), *disapproved of by Luna*, 578 P.3d at 300 (internal quotation marks omitted). In so holding, the *Sullivan* court relied on *State v. Dillon*, 12 Wn. App. 2d 133, 148, 456 P.3d 1199, *review denied*, 195 Wn.2d 1022, 464 P.3d 198 (2020), *disapproved of by Luna*, 578 P.3d at 300, which in turn relied on *State v. Grier*, 168 Wn. App. 635, 646-47, 278 P.3d 225 (2012), *disapproved of by Luna*, 578 P.3d at 300. *Sullivan*, 18 Wn. App. 2d at 236. Similarly, in *Tharp*, a series of crimes were committed on the same day as the murder for which Tharp was convicted. All of these other crimes were uncharged as to Tharp, but were nevertheless admitted into evidence at trial over his objection. 96 Wn.2d at 592.

Without any reference to ER 404(b), the Supreme Court agreed with this court that these collateral crimes were properly admitted under the res gestae, or same transaction, analysis. *Id.* at 594.

In his motion for reconsideration, Robinson relies on *Luna* to argue that the *Sullivan*, *Dillon*, and *Grier* are no longer good law and, accordingly, the trial court was required to conduct an ER 404(b) analysis even if the evidence at issue was admissible as res gestae. Robinson misreads *Luna*. As Robinson notes, the court there held, "We disapprove [*Sullivan*, *Dillon*, and *Grier*] to the extent that they separate res gestae from consideration of ER 404(b)." 578 P.3d at 300. But contrary to Robinson's argument, the court did not hold that all res gestae evidence requires an ER 404(b) analysis. Instead, it held "*Sullivan*, *Dillon*, and *Grier* are all correct that if res gestae properly applies, ER 404(b) does not bar admission of bad acts evidence. But it is incorrect to say that this removes such evidence from the ambit of ER 404(b) in the first place." 578 P.3d at 300. The court also stated, "We have continuously described res gestae as a *potential exception* to ER 404(b)'s ban on evidence of other bad acts." *Id.* (emphasis added). And critical here, the court held, "*If the evidence is of a bad act*, a proper determination of admissibility requires considering both ER 404(b) and the exception that the proponent claims applies." *Id.* (emphasis added).

In other words, *Luna* holds that res gestae evidence that is a bad act requires an ER 404(b) analysis whereas res gestae evidence that is not a bad act does not require an ER 404(b) analysis. Here, the evidence of the acts at issue—looking and leaning into other apartment windows—was nothing more than

evidence of acts that occurred earlier that same morning that helped explain how the police were able to identify Robinson. While Robinson claims this evidence "painted [him] as a creepy, sexually dangerous man," any risk of unfair prejudice to Robinson could have been remedied with a limiting instruction, which Robinson did not request. The risk of such prejudice does not turn the evidence into a "bad act" that required an ER 404(b) analysis. Because ER 404(b) is not implicated here, the trial court did not abuse its discretion, nor did it err, in failing to conduct an ER 404(b) analysis.

B.     Comparability Analysis at Sentencing

Robinson next argues his conviction for aggravated assault in Pennsylvania was improperly included in his offender score at sentencing. We again disagree.

Washington's Sentencing Reform Act (SRA) provides "[o]ut-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law" to calculate a defendant's offender score. RCW 9.94A.525(3). "Comparability of a prior out of state conviction is reviewed de novo." *State v. Sublett*, 176 Wn.2d 58, 87, 292 P.3d 715 (2012). *Sublett* provides the two-part test for comparability:

> To determine whether a foreign offense is comparable to a Washington offense, we first consider if the elements of the foreign offense are substantially similar to the Washington counterpart. If so, the inquiry ends. If not, we determine whether the offenses are factually comparable, that is, whether the conduct underlying the foreign offense would have violated the comparable Washington statute.

*Id.* (citing *State v. Thiefault*, 160 Wn.2d 409, 414-15, 158 P.3d 580 (2007)). Here, as in *Sublett*, there is no adequate factual record of the Pennsylvania conviction

so comparability must be determined based solely on the legal elements of the crime.[2]

In determining legal comparability, the elements of the two crimes need not be identical; instead, they must be "substantially similar." *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005). As the court explained in *State v. Jordan*, 180 Wn.2d 456, 465, 325 P.3d 181 (2014), "Given the legislature's broad purpose and the SRA's loose point assignment, we have interpreted the SRA as requiring rough comparability—not precision—among offenses." Succinctly put, "comparability analysis is not an exact science." *State v. Stockwell,* 159 Wn.2d 394, 397, 150 P.3d 82 (2007).

Applying these legal principles here, the elements of the two offenses are sufficiently comparable. In Pennsylvania, "[a] person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). "Serious bodily injury," in turn, means "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. The Washington statute for assault in the third degree, in turn, provides, "A person is guilty of assault in the third degree if he or she . . . [w]ith criminal negligence,

---

[2] The appellate record contains the information and criminal complaint but no evidentiary basis to establish a factual comparison to Washington's third degree assault is provided, such as a stipulation or acknowledgement of guilt from Robinson as to any underlying facts.

causes bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering." RCW 9A.36.031(1)(f).

As can be seen from the text of the statutes, the crimes are "substantially similar" and "roughly comparable." Just as Washington requires assaultive conduct that "causes bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering," Pennsylvania requires conduct that causes "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. While not identical, these elements are "roughly comparable."

Furthermore, the mens rea elements of the two crimes are comparable. The Pennsylvania statute requires that the defendant act "intentionally, knowingly or recklessly." 18 Pa.C.S. § 2702(a)(1). The Washington statute requires "criminal negligence," RCW.9A.36.031(1)(f), and RCW 9A.08.010(2) defines that requirement as follows: "When a statute provides that criminal negligence suffices to establish an element of an offense, such element also is established if a person acts intentionally, knowingly, or recklessly." RCW 9A.08.010(2). Thus, the mens rea elements are also legally comparable.

Robinson argues the statutes are not legally comparable because the Pennsylvania statute includes "attempt" and the Washington statute does not, but this argument also fails. In *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009), the court explained the term "assault" is "an element of the crime" of assault and is defined by common law to include "(1) an unlawful touching (actual battery);

- 10 -

(2) an attempt with unlawful force to inflict bodily injury upon another, tending but failing to accomplish it (attempted battery); and (3) putting another in apprehension of harm."  Applying the second prong of this definition, the Washington assault statute, like the Pennsylvania statute, includes attempt.  The trial court did not err when it included the Pennsylvania conviction in Robinson's offender score at sentencing.

C.    Community Custody Condition Concerning Geographic Boundaries

Robinson next argues the community custody condition concerning geographic boundaries imposed by the trial court at sentencing was unconstitutionally vague.  That condition requires that Robinson "[r]emain within geographic boundaries, as set forth in writing by the Department of Correction Officer or as set forth with SODA [Stay Out of Drug Area] order."  Our recent opinion in *State v. Lundstrom,* __ Wn. App. 2d __, 572 P.3d 1243, 1245-46 (2025), holds that an identical community custody condition imposing geographical boundaries, as mandated by RCW 9.94A.704(3)(b), is not unconstitutionally vague.  Applying *Lundstrom* here, Robinson's contrary argument fails.

D.    VPA and DNA Collection Fee

Lastly, Robinson argues remand is necessary to strike the VPA and DNA collection fee from his judgment and sentence because the legislature amended the VPA statute to prohibit imposition of the VPA on indigent defendants as of July 1, 2023 and amended the DNA collection fee statute to allow waiver of the DNA collection fee upon motion of the offender also as of July 1, 2023.  Because Robinson has made a sufficient showing of indigency and the State does not

oppose his request, we remand for the trial court to strike the VPA and DNA collection fee from Robinson's judgment and sentence. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023) ("Although [the] amendment [to RCW 7.68.035] will take effect after Ellis's resentencing, it applies to Ellis because this case is on direct appeal.").

In all other respects, we affirm.

_____
Feldman, J.

WE CONCUR:

_____     _____
Coburn, J.                                                    Mann, J.